In re David B. CROWLEY, Debtor.

William H. HOWISON, Trustee,
Plaintiff,

v.

ROCKPORT NATIONAL BANK, David
B. Crowley, Defendants.

Bankruptcy No. 284–00082.
Adv. No. 284–0050.

United States Bankruptcy Court,
D. Maine.

Sept. 25, 1984.

William Howison, Portland, Maine, for plaintiff.

Edwin T. Holmes, Rockport, Mass., for defendants.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The trustee seeks a determination that the security interest of Rockport National Bank in the debtor's automobile is unperfected.[1] Although it admits that neither

---

**1.** The trustee's complaint in fact seeks that the security interest be found "invalid" and classified as unsecured. There is, of course, a difference between "validity" and "perfection." No one in this proceeding really contests the validity of the security agreement between the debtor and the secured party. Rather, the trustee argues that the security agreement is not *perfected* against subsequent creditors and lienholders. *See Bezanson v. Indian Head Bank & Trust Co. (In re Howell),* 28 B.R. 273 (Bankr.D.Me.1983). Since both the trustee and the bank have pro-

Maine nor Massachusetts has issued a certificate of title for the Mercedes and that no UCC financing statement has been filed in either state, the bank contends that its interest is perfected. The court can not agree. The trustee's motion for summary judgment will be granted.

The pertinent facts underlying this motion for summary judgment are not disputed. On June 25, 1982, the Rockport National Bank of Rockport, Massachusetts, financed $6500 which the debtor used to purchase a 1972 Mercedes sedan. That same day the parties executed a promissory note and a security agreement granting the bank a security interest in the automobile. At that time the debtor lived in Rockport, Massachusetts. The bank, which did not file a UCC financing statement to perfect its security interest, repeatedly asked the debtor to obtain a certificate of title for the car. Over a year after the purchase of the automobile, the Massachusetts Registry of Motor Vehicles on September 12, 1983, responded to the debtor's belated request for a title by informing the debtor that the 1972 Mercedes, being over ten (10) years old, was exempt from the Massachusetts title statute.

When he applied to the Massachusetts Registry of Motor Vehicles for the title, the debtor had been living in Maine since at least May 20, 1983, when he registered his car in this state and gave his address as West Bath, Maine. Maine has not issued a title certificate on the Mercedes, nor has the bank filed a UCC financing statement in Maine to perfect its security interest. The debtor filed his petition under chapter 7 of the Bankruptcy Code on March 22, 1984, and the trustee was appointed on the same date.

■ It has been said that "[i]n a connoisseur's list of the most confusing and frustrating problems under Article 9, there would surely be a case or two involving a

multistate situation and one or more certificate of title statutes." 1 P. Coogan, W. Hogan and D. Vagts, *Secured Transactions Under the Uniform Commercial Code* § 3A.06[3], at 212.26 (1980). This is such a situation. Both Maine and Massachusetts have enacted the Uniform Motor Vehicle Certificate of Title and Anti-theft Act in similar, but not identical, forms. 29 M.R.S.A. § 2350–2461 and Mass.Ann.Laws ch. 90D, §§ 1–38. Although the bank argues that under the Massachusetts title statute, *application* for a certificate of title perfects a security interest, even when a certificate is not obtainable for a vehicle, it is clear to the court that the 1972 Mercedes is not subject to the certificate of title statute as adopted in either Maine or Massachusetts. In both states automobiles which are ten or more years old are exempt from the statutes. 29 M.R.S.A. § 2362(13) (Supp.1983–1984); Mass.Ann.Laws ch. 90D, § 2(a)(11) (Law.Co-op., Supp.1984). Consequently, in neither state is perfection of a security interest in a car accomplished by the type of notice required under the relevant provision of the title statute, 29 M.R.S.A. § 2402(1) (1978); Mass.Ann.Laws ch. 90D, § 21 (1975), a method which is *exclusive* for vehicles *subject* to the statute. 29 M.R.S.A. § 2407 (1978); Mass.Ann.Laws ch. 90D, § 26 (1975). The debtor's Mercedes was ten years old when he purchased it and financed it through the Rockport National Bank and eleven years old when he registered it in Maine and later attempted to obtain a certificate of title in Massachusetts. The title statutes simply do not govern perfection in this case.

■ Since the debtor's 1972 Mercedes is not subject to a title statute, the Uniform Commercial Code controls perfection of the bank's security interest. The applicable section of the Code's conflict of laws provision for the perfection of security interests in multiple state transactions reads [2]:

---

ceeded as though the complaint sought to have the security interest declared *unperfected*, the court will proceed as though that were the issue raised in the complaint. Bankr R. 7015; Fed.R. Civ.P. 15(b).

**2.** The rules of section 9–103 are grouped according to type of collateral. Section 9–103(2), (11 M.R.S.A. § 9–103(2) and Mass.Ann.Laws ch. 106, § 9–103(2)), which sets out rules for goods covered by a certificate of title, is not applicable

Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction *where the collateral is when the last event occurs* on which is based the assertion that the security interest is perfected or unperfected.

11 M.R.S.A. § 9–103(1)(b) (Supp.1983–1984) (emphasis added). (The correlating section of the code as enacted in Massachusetts is identical. Mass.Ann.Laws ch. 106, § 9–103(1)(b)). *See also* J. White and R. Summers, *Uniform Commercial Code* § 23–19, at 978 (1980).

 The "last event" rule, as section 9–103(1)(b) is known, tells a creditor that the law of the state where the collateral is when the last step toward perfection is taken governs initial perfection. For a creditor to have a perfected security interest, several "events" must occur: 1) If the creditor does not possess the collateral, there must be a written security agreement signed by the debtor, 2) Value must have been given, 3) The debtor must have rights in the collateral, and usually, 4) The creditor must have filed a financing statement. 11 M.R.S.A. §§ 9–303(1), 9–203(1) and 9–302(1) (Supp.1983–1984). These steps may occur in any order. J. White and R. Summers, *Uniform Commercial Code* ¶ 23–18, at 966 (1980).

In the case before this court, three of the four steps necessary to perfect the bank's security interest occurred in June 1982: the debtor signed the agreement, the creditor gave value, and the debtor acquired rights in the Mercedes. Not until more than a year later did the "last event" occur. The bank bases its assertion that its security interest is perfected on the debtor's *application* to the Massachusetts Registry of Vehicles for a title. At the time of the application, the "last step" toward perfection, the collateral was in Maine at the debtor's new residence. Con-

sequently, the law of Maine governs perfection and the effect of perfection or nonperfection.

Under Maine's version of the Uniform Commercial Code, a financing statement must be filed to perfect all security interests except for enumerated exceptions. 11 M.R.S.A. § 9–302 (1964 and Supp.1983–1984). Rockport National Bank's purchase money security interest in the debtor's Mercedes is not among these exceptions. Therefore, only by filing a UCC financing statement in the office of the Secretary of State could the bank have perfected its interest. 11 M.R.S.A. § 9–401(1)(b) (Supp. 1983–1984). The bank filed no financing statement. Since the bank's security interest was unperfected on the date that the debtor filed his bankruptcy petition, the trustee in his position as hypothetical lien creditor has priority over the secured creditor. 11 U.S.C.A. § 544(a)(1) (1979) and 11 M.R.S.A. § 9–301(1)(b) and (3) (Supp.1983–1984).

An appropriate order will be entered.

---

here. When section 9–103(2) does not apply to a vehicle, one must turn to section 9–103(1) or section 9–103(3), depending on the debtor's use of collateral. J. White and R. Summers, *Uniform Commercial Code* § 23–19, at 978 (1980).

Subsection 3 applies if the mobile goods are leased equipment or leased inventory. Since the debtor's automobile was owned and held for personal use, the rules of section 9–103(1), governing ordinary goods, pertain.